UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TERESA MIRLL, | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | )   Case No. CIV-19-1143-G |
| | ) |
| STATE OF OKLAHOMA *ex rel.* | ) |
| UNIVERSITY OF CENTRAL | ) |
| OKLAHOMA et al., | ) |
| | ) |
|    Defendants. | ) |

# ORDER

Plaintiff Teresa Mirll filed this lawsuit on November 6, 2019, alleging violations of her federal and state constitutional rights against three individuals: Charlotte Simmons, PhD, in her individual capacity as Vice President of Academic Affairs for the University of Central Oklahoma ("UCO"); Darla Sherman, in her individual capacity as Tutoring Center Manager for UCO; and Erika Cerda, in her individual capacity as Employee Relations Director for UCO. *See* Pet. (Doc. No. 1-1). An amended complaint was filed on January 7, 2020. *See* Am. Compl. (Doc. No. 4).[1]

Now before the Court is a Motion to Dismiss filed by Defendant Cerda (Doc. No. 8), as well as Plaintiff's Response (Doc. No. 15) and Defendant Cerda's Reply (Doc. No. 16). Also pending is a Motion to Dismiss filed jointly by Defendants Simmons and

---

[1] All claims against a fourth defendant, State of Oklahoma *ex rel.* University of Central Oklahoma, have been dismissed by separate order.

Sherman (Doc. No. 14), to which Plaintiff has responded (Doc. No. 17), and on which Defendants have replied (Doc. No. 22).[2]

## I.     *Plaintiff's Allegations*

In her Amended Complaint, Plaintiff alleges that Defendants violated her rights in connection with her employment at UCO. Plaintiff alleges that she was hired by Defendant Sherman in January 2014 as a Writing Tutor and was eventually promoted to the position of Tutoring Center Administrative Assistant. *See* Am. Compl. ¶¶ 5-8.

Plaintiff alleges that after she began working as the Administrative Assistant she discovered "numerous issues," including the fact that a certain tutor "consistently reported and was paid for time he did not work." *Id.* ¶¶ 10-11. Plaintiff reported the tutor's time theft to Defendant Sherman, but Defendant Sherman "made clear that she had no intention" of remedying the conduct. *Id.* ¶¶ 12-14. Plaintiff relayed her concerns to Defendant Simmons, but "no remedial action was taken," and Defendant Sherman again expressed her desire not to take corrective measures. *Id.* ¶¶ 15-19.

On or about December 15, 2017, Plaintiff then "informed Defendant Cerda" that the tutor "was fraudulently reporting his work hours, i.e., stealing public funds," and that nothing had been done despite Defendant Sherman's and Defendant Simmons' knowledge of the issue. *Id.* ¶ 21. Later that same day, "Defendants Cerda and Simmons fired Plaintiff." *Id.* ¶ 23 ("Defendant Cerda said a collective decision was made, including [by] Defendant Simmons, to terminate Plaintiff's employment.").

---

[2] Because the same arguments are raised by both Motions, the Court cites only to the first-filed Motion, Response, and Reply.

Plaintiff alleges that her "reports of unlawful activity" were identified as the reason for her termination and that "the parties at issue admitted they were retaliating against Plaintiff for her First Amendment protected activity." *Id.* ¶ 24. "Specifically, Defendant Cerda stated that Plaintiff spent too much time reporting [the tutor's] misconduct, rather than focusing on her own work." *Id.* ¶ 25. Plaintiff alleges that her own work performance had been satisfactory and that UCO's guidelines were not followed in terminating Plaintiff. *See id.* ¶ 26.

Plaintiff brings two claims, each against all three individual Defendants in their individual capacities: (i) violation of Plaintiff's First Amendment right to freedom of speech, pursuant to 42 U.S.C. § 1983; and (ii) conspiracy to deprive Plaintiff of her constitutional right to free speech, in violation of 42 U.S.C. § 1985(3). *See id.* ¶¶ 28-39. Plaintiff seeks compensatory damages as well as punitive damages. *See id.* ¶ 42.

II.   *Standard of Review*

In analyzing a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013). A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (footnote and citation omitted); *see Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) ("[T]o withstand a motion to dismiss, a complaint must contain enough allegations of fact to state a claim to

relief that is plausible on its face." (internal quotation marks omitted)). Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

   III.   *Defendants' Motions*

       A.   *Plaintiff's First Amendment Claims*

Defendants first argue that Plaintiff fails to state a viable claim for violation of her First Amendment rights based on Defendants' alleged conduct. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Here, Defendants do not dispute that they were acting under color of state law in connection with Plaintiff's termination from her position as Administrative Assistant. *See id*. at 50 ("[G]enerally, a public employee acts under color of state law . . . while exercising his responsibilities pursuant to state law."). Defendants' challenge is broadly aimed at whether Plaintiff can show that, in doing so, Defendants "subject[ed]" Plaintiff, "or cause[d] [Plaintiff] to be subjected," "to a deprivation of . . . her lawful rights." *Porro v. Barnes*, 624 F.3d 1322, 1327 (10th Cir. 2010) (internal quotation marks omitted).

A government employee "does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment." *Connick v. Mvers*, 461 U.S. 138, 140 (1983). "Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern."

4

*Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). "However, the interests of public employees in commenting on matters of public concern must be balanced with the employer's interests in promoting the efficiency of the public services it performs through its employees." *Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011) (internal quotation marks omitted).

Through two decisions—*Pickering v. Board of Education*, 391 U.S. 563, 568 (1968), and *Garcetti*, 547 U.S. at 417—the Supreme Court has articulated five factors to be considered in analyzing public-employee free-speech cases. *Leverington*, 643 F.3d at 724 (explaining that "after *Garcetti*, it is apparent that the *Pickering* analysis of freedom of speech retaliation claims is a five step inquiry" that will be referred to as "the *Garcetti/Pickering* analysis" (internal quotation marks omitted)). The Tenth Circuit has summarized these factors as follows:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Eisenhour v. Weber Cty.*, 744 F.3d 1220, 1227-28 (10th Cir. 2014) (internal quotation marks omitted). "The first three elements are issues of law for the court to decide, while the last two are factual issues typically decided by the jury." *Knopf v. Williams*, 884 F.3d 939, 945 (10th Cir. 2018) (internal quotation marks omitted).

*1. Whether the Speech Was Made Pursuant to Official Duties*

Defendants contend, first, that Plaintiff's alleged communications regarding the tutor's fraudulent activities were made not as a citizen but pursuant to her official duties, such that First Amendment protection does not apply. *See Hesse v. Town of Jackson*, 541 F.3d 1240, 1249 (10th Cir. 2008) ("If the employee speaks pursuant to his official duties, then there is no constitutional protection because the restriction on speech simply reflects the exercise of employer control over what the employer itself has commissioned or created." (internal quotation marks omitted)).[3]

The Tenth Circuit takes a "broad view" of what constitutes speech that is pursuant to an employee's official duties, and speech may be so categorized "even if it deals with activities that the employee is not expressly required to perform." *Thomas v. City of Blanchard*, 548 F.3d 1317, 1324 (10th Cir. 2008) (internal quotation marks omitted). Courts examine the instances of speech on a case-by-case basis, "looking both to the content of the speech, as well as the employee's chosen audience, to determine whether the speech is made pursuant to an employee's official duties." *Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 746 (10th Cir. 2010) (noting that courts focus on whether the speech stemmed from and was of the type of work the employee was paid to do). "[T]he

---

[3] Defendant Cerda attempts to rely upon a job posting that is attached to her Motion as evidence of Plaintiff's duties while employed at UCO. *See* Def. Cerda Mot. Ex. 1 (Doc. No. 8-1). The Court has disregarded this document, which was not referenced in the Amended Complaint, and has likewise disregarded a declaration submitted by Plaintiff (Doc. No. 15-1) as matters outside the pleadings and, therefore, not properly reviewable in determining a Rule 12(b)(6) motion. *See* Fed. R. Civ. P. 12(b)(6); *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998).

ultimate question is whether the employee speaks as a citizen or instead as a government employee." *Id.* (internal quotation marks omitted).

Here, the relevant pleading avers that Plaintiff was employed as a Tutoring Center Administrative Assistant when she "discovered numerous issues," including the tutor's time theft. Am. Compl. ¶ 11. When Plaintiff reported the misconduct, she explained to her supervisor, but also to the Employee Relations Director and the Vice President of Academic Affairs, that "based on [her] faculty training, time theft constituted embezzlement and was unlawful." *Id.* ¶ 14; *see also id.* ¶ 30 ("[Plaintiff's] reports were calculated to disclose impropriety and other malfeasance by Defendants."). "Plaintiff's reports of unlawful activity were identified as the very reason for her termination," and "Defendant Cerda stated that Plaintiff spent too much time reporting Bilbrey's misconduct, *rather than focusing on her own work*." *Id.* ¶¶ 24, 25 (emphasis added).

Viewing these factual allegations in the light most favorable to Plaintiff, Plaintiff has pleaded, beyond mere speculation, that her reporting was made as a public citizen rather than as an employee. Although Plaintiff sought action from several employees and alleges that she eventually "escalated" her complaint, *id.* ¶ 21, the pleading does not demonstrate that Plaintiff merely went up the chain of command in seeking resolution of the issue, as Defendants argue. *Cf. Rohrbough*, 596 F.3d at 747 ("[S]peech directed at an individual or entity outside of an employee's chain of command is often outside of an employee's official duties."). Similarly, although Defendants argue that such reporting was "part of [Plaintiff's] job duties," Def. Cerda Reply at 3, at this stage the Court is limited to reviewing the Amended Complaint only. The pleading in no way confirms that view. *See*

7

*Lane v. Franks*, 573 U.S. 228, 240 (2014) (noting that the "critical question" is "whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties").

For purposes of Rule 12(b)(6), Plaintiff has adequately and plausibly pleaded that her speech was not made pursuant to her employment duties. *See id.* ("[T]he mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than citizen—speech."); *Lobato v. N.M. Env't Dep't*, 838 F. Supp. 2d 1213, 1227 (D.N.M. 2011) ("A court may find that an employee spoke out as a citizen even where the expression was made at work, and involved actions occurring in the workplace.").

### 2.  *Whether the Speech Was on a Matter of Public Concern*

To adequately plead this element, Plaintiff must allege that her speech "involve[d] a matter of public concern and not merely a personal issue internal to the workplace." *Moore v. City of Wynnewood*, 57 F.3d 924, 931 (10th Cir. 1995).  Defendants argue that because Plaintiff's complaints focused upon a single tutor's malfeasance, and because Plaintiff requested that remedial action be taken, the complaints "involved internal employee disputes" rather than a matter of public concern.  Def. Cerda Mot. at 7.

Although Plaintiff's pleading does portray her complaints as focused upon a single tutor, construed in her favor the allegations reflect that they nonetheless involved more than a mere personal grievance.  *See, e.g.*, Am. Compl. ¶¶ 10 (alleging that Plaintiff complained that the tutor was "mismanaging public funds"), 17 (alleging that Plaintiff explained that the conduct "resulted in thousands of dollars of public funds being stolen

over the years). "Speech which discloses any evidence of corruption, impropriety, or other malfeasance on the party of [government] officials, in terms of content, clearly concerns matters of public import." *Conaway v. Smith*, 853 F.2d 789, 796 (10th Cir. 1988). Plaintiff therefore has adequately pleaded that her speech involved a matter of public concern for purposes of the *Garcetti/Pickering* analysis.

### 3. Qualified Immunity

Defendants argue that they are entitled to qualified immunity on Plaintiff's First Amendment Claim. "Qualified immunity protects officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks omitted). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Stewart v. Beach*, 701 F.3d 1322, 1330 (10th Cir. 2012) (internal quotation marks omitted).

While a defendant may assert the defense of qualified immunity in a motion to dismiss, doing so "subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Thomas*, 765 F.3d at 1194 (internal quotation marks omitted). "At [the motion to dismiss] stage, it is the defendant's conduct as alleged in the complaint that is scrutinized for 'objective legal reasonableness.'" *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (emphasis omitted). "In resolving a motion to dismiss based on qualified immunity, the court considers (1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly

established at the time of defendant's alleged misconduct." *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013) (internal quotation marks omitted); *see Robbins*, 519 F.3d at 1249.

Defendants' assertion of qualified immunity rests upon their contentions of inadequate pleading addressed above. *See* Def. Cerda Mot. 8-9. But as noted above, "the facts that [Plaintiff] has alleged" do "make out a violation of a constitutional right." *Keith*, 707 F.3d at 1188 (internal quotation marks omitted). Further, from the wide range of authorities cited above it is clear that these First Amendment rights were clearly established at the time of Plaintiff's termination in December 2017. *See supra*; Am. Compl. ¶¶ 8, 20, 23; *see also Prager v. LaFaver*, 180 F.3d 1185, 1192 (10th Cir. 1999) (finding that prior decisions "clearly established that an employee's strong interest in disclosing governmental corruption outweighs unsubstantiated assertions of workplace disruption and put [the defendant] on notice that the conduct alleged in [the plaintiff's] complaint [of suspension and termination of employment] would violate the law"). Dismissal of these claims is not warranted on this basis. *See generally* James W. Moore, 2 *Moore's Federal Practice* § 12.34[4][b] (3d ed. 2019) (noting that establishment of the defense of qualified immunity ordinarily requires factual review and should not support dismissal for failure to state a claim).[4]

---

[4] This finding "does not foreclose Defendants from reasserting their entitlement to qualified immunity on a motion for summary judg[]ment should [Plaintiff's] allegations in the complaint prove to be unfounded." *Seamons v. Snow*, 84 F.3d 1226, 1238 (10th Cir. 1996) (reversing a grant of qualified immunity on a motion to dismiss where it was "premature, absent a factual record"). The Court makes no finding at this stage as to whether Defendants will be able to show entitlement to qualified immunity when Plaintiff "can no

### B. *Plaintiff's Conspiracy Claim*

Plaintiff additionally alleges that Defendants "conspired to deprive Plaintiff of her right to free speech." Am. Compl. ¶ 36; *see also id.* ¶¶ 34-39 (citing 42 U.S.C. § 1985(3)). Defendants argue that Plaintiff fails to state a claim pursuant to § 1985(3), because the Amended Complaint lacks any allegation of class-based or racially discriminatory animus or a factual basis to support such an allegation. *See* Def. Cerda Mot. at 9-10 (citing *Bisbee v. Bey*, 39 F.3d 1096, 1102 (10th Cir. 1994) ("Here, plaintiff has made no allegations of race or class-based animus. As such, he has not stated a claim under section 1985.")). Plaintiff responds that she "intended to assert her conspiracy claim under § 1983," not § 1985(3), and that she has sufficiently stated a claim under that statute. Pl.'s Cerda Resp. at 14-15.

To adequately allege a conspiracy claim under § 1983, a plaintiff must allege specific facts that show "a combination of two or more persons acting in concert" and "an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective." *Brooks v. Gaenzle*, 614 F.3d 1213, 1227-28 (10th Cir. 2010); *see also Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990). Plaintiff's sole relevant factual averment is the allegation that "Defendant Cerda said a collective decision was made, including Defendant Simmons, to terminate Plaintiff's employment." Am. Compl. ¶ 23; *see* Pl.'s Cerda Resp. at 15. This isolated statement does not allow a reasonable inference to be drawn that these three Defendants "acted in concert to deprive

---

longer rest on the pleadings." *Thomas*, 765 F.3d at 1194 (internal quotation marks omitted).

[Plaintiff] of [her] constitutional rights." *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998).[5]

## CONCLUSION

As outlined herein, the Motions to Dismiss (Doc. Nos. 8, 14) are GRANTED IN PART and DENIED IN PART.  Plaintiff's § 1983 claims for violation of the First Amendment shall proceed.  Plaintiff's conspiracy claims are dismissed without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

Defendants' Motion to Strike (Doc. No. 25) is DENIED AS MOOT.

IT IS SO ORDERED this 4th day of June, 2020.

*[signature]*
CHARLES B. GOODWIN
United States District Judge

---

[5] Plaintiff requests that the Court consider allowing her leave to amend in lieu of dismissal of this claim but fails to adequately inform the Court how amendment would resolve these deficiencies.  *Cf.* LCvR 15.1 (requiring that the proposed pleading be submitted with a motion to amend).